**McCel BENJAMIN, Plaintiff-Appellant,**

v.

**PLAINS INSURANCE COMPANY,
Defendant-Appellee.**

No. 80–2361
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.
Unit A

July 10, 1981.

Bader & Cox, Bertran T. Bader, III, Dallas, Tex., for plaintiff-appellant.

Henderson, Bryant & Wolfe, Donald H. Flanary, Jr., Sherman, Tex., for defendant-appellee.

Before CHARLES CLARK, REAVLEY and WILLIAMS, Circuit Judges.

PER CURIAM:

McCel Benjamin filed suit to recover an $18,000 judgment against defendant insurance company under an automobile liability insurance policy issued by the company to Douglas Carl Largin. The case was tried on stipulated facts.

Douglas Largin was employed by Utter-Barks Ford, Inc. in Sherman, Texas, as the sales manager for new and used cars. He was furnished a 1975 Ford station wagon to be used as a "demonstrator". He was allowed to drive it to and from work. But it was understood between Largin and the dealer that it was not to be used for personal business. Plains was the liability insurer of Douglas Carl Largin for his family automobiles.

On July 18, 1975, Douglas Largin's daughter, Carla Beth Largin, asked permission of her father to drive the company owned demonstrator on a short family errand to pick up a younger brother. The father gave permission. During that drive, the vehicle driven by Carla Largin was involved in a collision with the vehicle driven by plaintiff Benjamin; Benjamin was awarded a $18,000 judgment against Carla Largin in state court. It is stipulated the judgment is valid.

Benjamin then brought this diversity jurisdiction suit in federal court against the Plains Insurance Company, as Douglas Largin's liability insuror, to recover on the $18,000 judgment. Plains denied liability under the insurance policy which insured Douglas Largin. The critical provisions of that policy read as follows:

PERSONS INSURED: The following are insured under Part 1. . . .

(b) with respect to a non-owned automobile,

(1) the named insured,

(2) any relative, but only with respect to a private passenger automobile or trailer, provided his actual operation of (if he is not operating) the other actual use thereof is with the permission, or reasonably believed to be with the permission, of the owner and is within the scope of such permission. . . .

"*Non owned automobile*" means an automobile or trailer not owned by or furnished for the regular use of either

the named insured or any relative, other than a temporary substitute automobile.

The district court, 500 F.Supp. 920, dismissed plaintiff's suit on the merits on the ground that under these provisions the insurance company had not covered Douglas Largin or his daughter with respect to liability for the accident involving the company demonstrator automobile.

On appeal, Benjamin raises two issues. First, since the demonstrator was stipulated to be a "non-owned automobile" Benjamin claims coverage on the ground that the automobile was not furnished for the "regular use" of the named insured or a relative. If the automobile was furnished for Largin's regular use it is clear the coverage of a "non-owned" automobile is excluded under the policy. Second, Benjamin asserts that Carla Beth Largin "reasonably believed" that she had the permission of the owner to drive the demonstrator in which she was involved in the accident.

Before discussion of these two issues, it is well to set out stipulations 23–27 to which both parties agreed. These are the stipulations which are directly relevant to the two issues in this case:

23. That the 1975 Ford station wagon involved in the collision with McCel Benjamin was furnished to Douglas Carl Largin as a demonstrator automobile for use in his position at Utter-Barks Ford, Inc., as new and used car sales manager and further, he was permitted to drive such vehicle to and from work, but for no other purpose.

24. That the 1975 Ford station wagon involved in the collision with McCel Benjamin was not furnished for the purpose of and was not to be used for personal business of Douglas Largin or to be operated by other members of his family.

25. That the foregoing restrictions placed on the use of the 1975 Ford station wagon were part of Utter-Barks company policy and had been communicated to Douglas Largin by Amos Barks, one of the principal owners.

26. That on several occasions prior to the collision with McCel Benjamin, Carla Largin had been instructed that the car was only for her father's business use.

27. That on the occasion in question Carla Largin did not have the actual permission of the owner to use the 1975 Ford station wagon.

We turn to the contention that the non-owned vehicle was not furnished for the "regular use" of Douglas Largin. It is well established that the purpose of this provision creating an exception to coverage of non-owned vehicles in automobile insurance policies is to make certain that the insured properly pays premiums on all of the vehicles which are regularly used and therefore are covered by the policy. The non-owned exception, as well as other exceptions involving replacement cars, rental cars, etc., are designed as a convenience to the insured to enable coverage in the case of occasional and sporadic use of such vehicles. To cover a non-owned vehicle regularly used by an insured would cause the insurance company to have to insure vehicles for which the insured did not pay insured premiums. Douglas Largin did not list this vehicle as one of the family cars insured on this family liability policy. Yet he used it daily.

■ It is the clear intent of such provisions to protect the insurance companies from inadequate premiums for the automobiles which they cover. *See in general* 6C Appleman Insurance § 4455, which states at p. 552: "The purpose of a 'drive other cars' clause is to provide coverage to an insured and others for the occasional and infrequent driving of vehicles other than those insured by the policy. It is not designed to relieve the insured of the necessity of paying premiums upon vehicles regularly used by him." *See also*, 7 Am.Jur.2d, Automobile Insurance, § 237–238. The Texas law, applicable in this case, recognizes this general distinction between regular and occasional use. *Neal v. United States Fire Ins. Co.*, 427 S.W.2d 676, 681 (Tex.Civ.App.1968); *International Service Ins. Co. v. Walther*, 463 S.W.2d 774, 775 (Tex.Civ.App.1971). The fact that the permission to use the non-

owned vehicle is restricted in some way does not bar a finding of "regular use". 6C Appleman Insurance § 4455, at p. 565.

In Texas the issue of "regular use" is a fact question for the jury. *Johnson v. Home Indemnity Co.*, 401 S.W.2d 871 (Tex.Civ.App.1966). The district court, in applying Texas law on this issue, must be affirmed. As the stipulation reveals, it was well understood by Douglas Largin and his daughter that the car was not to be used for personal reasons. The finding that the automobile was furnished by the Ford dealer for the "regular use" of Douglas Largin is a fact decision under Texas law well supported by the evidence. Largin was in the car every day, driving to and from work, and driving as he needed to in connection with his duties as sales manager. This is not the unusual, temporary, or sporadic use contemplated in the policy as a justification for coverage of the non-owned vehicle. Rather, it is regular day-by-day use and thus falls within the exception to coverage of non-owned vehicles in this automobile liability policy.

Having upheld this finding by the district court, it becomes unnecessary to decide whether there was implied permission by the owner to Carla Beth Largin to drive the vehicle. This non-owned automobile, loaned for regular use, was not covered at all by the Douglas Largin insurance policy issued by defendant company to insure Largin's family automobiles. The dismissal of the cause of action on the merits by the district court was without error.

AFFIRMED.