# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-17-00684-CV

**Progressive County Mutual Insurance Company, Appellant**

**v.**

**Edwin Emenike, Appellee**

### FROM COUNTY COURT AT LAW NO. 1 OF TRAVIS COUNTY
### NO. C-1-CV-16-002471, HONORABLE TODD T. WONG, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Appellee Edwin Emenike sued appellant Progressive County Mutual Insurance Company (Progressive) after it denied Emenike's claim for uninsured/underinsured motorist benefits under his automobile insurance policy. After both parties moved for summary judgment on the issue of coverage, the trial court granted Emenike's motion for summary judgment and denied Progressive's motion for summary judgment. Because the summary-judgment record establishes as a matter of law that Emenike's claim is excluded from coverage by the terms of the policy, we will reverse the trial court's judgment and render judgment in favor of Progressive.

## BACKGROUND

The underlying facts pertinent to this appeal are undisputed. On or about March 9, 2014, Emenike was driving a white 2006 Dodge Grand Caravan when he was struck head-on by another vehicle. Emenike sustained a head injury as a result of the impact, was transported to a

nearby hospital, and later underwent neurosurgery to address his injuries. Emenike later settled with the tortfeasor driver; however, Emenike's bodily injury damages exceeded the amount available under the tortfeasor driver's automobile insurance policy.

At the time of the accident, Emenike was insured by Progressive under a standard Texas Auto Insurance Policy (the "Progressive Policy" or the "Policy"). Emenike owned four vehicles identified on the Progressive Policy's declarations page as "covered autos." The Dodge Grand Caravan, which Emenike leased from Austin Cab, Inc. and operated as a taxi cab, was not one of the vehicles identified as a "covered vehicle" on the Policy. Nevertheless, Emenike made a claim on the Policy for uninsured/underinsured motorist (UIM) benefits in the amount of $50,055. Progressive denied Emenike's claim for UIM benefits, citing the Policy's exclusion for bodily injury sustained while using or occupying a motor vehicle, other than a "covered auto," that is "available for the regular use" of the insured.

Emenike filed suit against Progressive alleging that his claim for damages fell within the scope of coverage for UIM benefits under the Policy and that Progressive's failure to pay his claim constituted a breach of contract. Emenike subsequently filed a motion for summary judgment on his claim, asserting that as a matter of law Progressive wrongfully denied his claim because the Dodge Grand Caravan was not "available for [his] regular use." In support of his motion, Emenike attached a copy of a portion of the Policy; Progressive's responses to his requests for admission; Austin Cab's objections and responses to a deposition by written questions, including a copy of Emenike's "Independent Contractor/Driver Agreement" with Austin Cab; and excerpts from his oral deposition. Progressive then filed its own motion for summary judgment on the coverage issue,

2

attaching a copy of the entire Policy along with Emenike's deposition and arguing that the summary-judgment record conclusively establishes that Emenike's claim is barred under the Policy's "regular use" exclusion.

The trial court granted Emenike's motion for summary judgment and denied Progressive's motion.[1] This appeal followed.

**STANDARD OF REVIEW**

We review a trial court's ruling on summary judgment de novo. *Traveler's Ins. Co. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010). Summary judgment is proper when the summary-judgment evidence shows that there are no disputed issues of material fact and that the movant is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c). In reviewing a trial court's ruling on summary judgment, we take as true all evidence favorable to the nonmovant, and indulge every reasonable inference and resolve all doubts in the nonmovant's favor. *Provident Life & Acc. Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003). When, as in this case, both parties file competing motions for summary judgment on overlapping issues and the trial court grants one party's motion and denies the other, we consider all the summary-judgment evidence and issues presented, and, if the trial court erred, we render the judgment the trial court should have rendered. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005).

---

[1] The parties later stipulated in writing to certain facts that had been left unresolved by the trial court's summary-judgment ruling, including that "[Emenike's] bodily injury damages caused by the car crash with the underlying tortfeasor . . . exceeded all available, applicable liability coverage by more than $50,055.00." Based on the stipulated facts, the parties filed a joint motion for entry of judgment. The trial court granted the motion and signed a final judgment on October 5, 2017.

3

To the extent resolution of this appeal requires us to interpret the Progressive Policy, we interpret the Policy as we do other contracts. *See Great Am. Ins. Co. v. Primo*, 512 S.W.3d 890, 892 (Tex. 2017). That is, we construe insurance policies "using ordinary rules of contract interpretation" to ascertain the parties' intent as reflected in the terms of the policy itself. *Nassar v. Liberty Mut. Fire Ins. Co.*, 508 S.W.3d 254, 257 (Tex. 2017) (quoting *Gilbert Tex. Constr., L.P. v. Underwriters at Lloyd's London*, 327 S.W.3d 118, 126 (Tex. 2010)). "When interpreting an insurance contract, we consider all of its parts, read all of them together, and give effect to all of them." *Greene v. Farmers Ins. Exch.*, 446 S.W.3d 761, 766 (Tex. 2014) (citing *Forbau v. Aetna Life Ins. Co.*, 876 S.W.2d 132, 133 (Tex. 1994)).

**ANALYSIS**

In one issue on appeal, Progressive asserts that the trial court erred in granting Emenike's motion for summary judgment and denying Progressive's motion for summary judgment on the overlapping issue of coverage.

Part III of the Progressive Policy is entitled "Uninsured/Underinsured Motorist Coverages" and provides:

> [Progressive] will pay for damages that an insured person is legally entitled to recover from the owner or operator of an uninsured motor vehicle because of bodily injury:
>
> 1.      sustained by an insured person;
>
> 2.      caused by an accident; and
>
> 3.      arising out of the ownership, maintenance, or use of an uninsured motor vehicle.

4

There is no dispute that Emenike's claim for UIM benefits falls within the general scope of UIM coverage under this provision. That is, Emenike (1) is an insured person under the Policy, (2) "legally entitled to recover [damages] from" the tortfeasor driver, (3) who sustained bodily injury as a result of an accident arising out of the tortfeasor driver's "use of an uninsured motor vehicle." Instead, the parties' coverage dispute centers on whether Emenike's claim is excluded from UIM coverage under what is commonly referred to as the "regular use" exclusion.

The regular-use exclusion to UIM benefits is included in the Progressive Policy under a provision entitled "Exclusions" and states, in relevant part:

> Coverage under this Part III [regarding UIM benefits] will not apply:
>
> 1.　　To bodily injury sustained by any person using or occupying:
>
> 　　. . . .
>
> 　　d.　　a motor vehicle that is owned by or available for the regular use of you or a relative. This exclusion does not apply to a covered auto that is insured under this Part III.

Insurance policies typically provide some coverage to an insured and others for the occasional and infrequent use of vehicles other than vehicles specifically insured by the policy. *Benjamin v. Plains Ins. Co.*, 650 F.2d 98, 101 (5th Cir. 1981) (applying Texas law). Conversely, the regular-use exclusion—a "typical and common policy provision"—"relieves the insurance company of the unfair burden of insuring an automobile not listed on the policy which an insured uses regularly but for which the insured pays no premium." *Francioni, IV v. Hartford Cas. Insur. Co.*, No. 15-528-SDD-EWD, 2017 WL 1015313, at *3 (M.D. La. March 15, 2017) (analyzing regular-use exclusion under

5

Louisiana law); *see also National Emblem Ins. Co. v. McClendon*, 481 S.W.2d 186, 190 (Tex. Civ. App.—Texarkana 1972, writ ref'd n.r.e.) (noting that purpose of exclusion relating to use of unscheduled automobiles is "to protect the insurer against the loss of premiums and against the increases and uncompensated hazard resulting from an insured's use of other automobiles"); *cf. Conlin v. State Farm Mut. Auto Ins. Co.*, 828 S.W.2d 332, 337 (Tex. App.—Austin 1992, writ denied) (concluding that owned-but-unscheduled-vehicle exclusion is valid and explaining that "[t]he public policy of this state . . . does not require that a person be allowed to insure and pay premiums based solely on the risks attendant to one vehicle, and then recover from the insurer for injuries sustained in or because of a different, unscheduled vehicle owned by the insured or a family member").

In the context of automobile insurance, this Court has recognized that the phrase "regular use" unambiguously means "a use steady or uniform in course, practice or occurrence, not subject to unexplained or irrational variation." *International Serv. Ins. Co. v. Walther*, 463 S.W.2d 774, 776 (Tex. Civ. App.—Austin 1971, no writ) (holding that employer-provided vehicle was furnished for regular use where vehicle was part of pool of vehicles furnished for employee's use). Thus, automobile insurance policies, such as the Progressive Policy, distinguish between "regular use," which is not covered, and "unusual, temporary, or sporadic use," which generally is covered. *See Benjamin*, 650 F.2d at 100.

In this case, the undisputed summary-judgment evidence establishes that Emenike was an independent contractor who leased the Dodge Grand Caravan from Austin Cab on a weekly basis for purposes of operating his taxi business. At the time of the accident, Emenike had leased the Dodge Grand Caravan from Austin Cab since January 2013 and was driving the vehicle three to

6

six days per week. Emenike testified in his deposition that at the end of each work day he could either park the vehicle on the street in front of his home or leave it at Austin Cab's headquarters. Because a vehicle left at Austin Cab's headquarters could potentially be leased out to another driver, Emenike kept the Dodge Grand Caravan at his home except when there was a maintenance issue that needed to be addressed. Emenike did not insure the Dodge Grand Caravan, but he had four other vehicles insured with Progressive.[2] According to Emenike, he did not need to use the Dodge Grand Caravan for personal errands. However, under the terms of Emenike's contractor agreement with Austin Cab, the vehicle was available to him at any time without limitation, so long as he continued to pay the lease.

In his motion for summary judgment, and now on appeal, Emenike concedes that the Dodge Grand Caravan is not a "covered auto," as that term is defined in the Policy, and he does not deny that he was "using or occupying" the vehicle when the accident occurred. Instead, Emenike emphasizes the fact that he leased the Dodge Grand Caravan on a weekly basis. Emenike contends that "'regular use' vehicles are vehicles that are available for one's use without charge, such as a relative's automobile or a company car." According to Emenike, "If one must pay a fee to use a vehicle, that vehicle is, as a matter of law, not available for one's regular use." Emenike does not cite, nor have we found, any authority to support his position that application of the regular-use exclusion is limited to vehicles acquired without charge. Moreover, Emenike's interpretation is not

---

[2] In addition, Emenike's independent-contractor agreement with Austin Cab makes clear that Austin Cab provides only minimal insurance on its leased vehicles and, as a result, recommends that its contractor drivers obtain additional coverage, especially when using the vehicle for personal purposes.

supported by the plain language of the Policy, which makes no distinction regarding the manner in or the terms under which a vehicle "available for . . . regular use" is acquired.

The evidence shows that at the time of the accident Emenike had been driving the Dodge Grand Caravan three to six days per week and fifteen to twenty days per month, for a period of more than a year. Viewing the evidence in the light most favorable to Emenike, we conclude that nothing in the record suggests that his use of the vehicle was "unusual, temporary, or sporadic." *See id.* In addition, a determination that the vehicle was "available for [Emenike's] regular use" is not precluded by the fact that Emenike obtained the vehicle through a weekly lease arrangement. Although the issue of "regular use" is generally a question of fact, *see id.* (citing *Johnson v. Home Indem. Co.*, 401 S.W.2d 871 (Tex. Civ. App.—Texarkana 1966, writ ref'd n.r.e.)), the issue may be decided as a matter of law when reasonable people could not differ as to the conclusion to be drawn from the evidence. *See City of Keller v. Wilson*, 168 S.W.3d 59, 60 (Tex. 2005); *see also Hall v. Southern Farm Bureau Cas. Ins. Co.*, 670 S.W.2d 775, 776 (Tex. App.—Fort Worth 1984, no writ) (affirming summary judgment for insurer, concluding that summary-judgment evidence established as a matter of law that employer-provided vehicle was furnished for insured's "regular use"). In this case, we conclude that the summary-judgment evidence conclusively establishes that the Dodge Grand Caravan that Emenike was operating at the time of the accident was a vehicle "available for [his] regular use." As a result, the trial court erred in denying Progressive's motion for summary judgment and in granting Emenike's motion for summary judgment.

**CONCLUSION**

Because the evidence conclusively establishes that Emenike's claim for UIM benefits is excluded from coverage, we reverse the judgment of the trial court and render judgment in favor of Progressive.

_____

Scott K. Field, Justice

Before Chief Justice Rose, Justices Goodwin and Field

Reversed and Rendered

Filed:   August 28, 2018

Do Not Publish