(673 P.2d 122)

No. 55,290

Central Security Mutual Insurance Company, *Appellant,* v. Victoria DePinto and Cindy Dirksen, *Defendants-Appellees,* and Hesston College, *Intervenor-Appellee.*

Opinion filed December 15, 1983.

*H. E. Jones* and *Steven J. Roth,* of Hershberger, Patterson, Jones & Roth, of Wichita, for appellant.

*Tom E. Hammond* and *Roger M. Theis,* of Render & Kamas, of Wichita, for appellee Cindy Dirksen.

*David C. Burns* and *Robert D. Myers,* of Speir, Stroberg & Sizemore, of Newton, for intervenor-appellee Hesston College.

No appearance for appellee Victoria DePinto.

Before Rees, P.J., Meyer, J., and Richard W. Wahl, District Judge assigned.

Wahl, J.: This is a declaratory judgment action in which Central Security Mutual Insurance Company appeals from the district court's determination that exclusionary language in an automobile insurance policy was not applicable to an automobile accident in which Victoria DePinto was driving a van belonging to Hesston College and in which the husband of Cindy Dirksen was killed.

In March, 1980, Victoria DePinto was a nursing student at Hesston College. As part of her training, she was required to participate with other students in nursing in clinical programs at

hospitals in the towns around Hesston. Hesston College provided vans to transport the nursing students to such programs with different students volunteering to serve as drivers each semester. DePinto volunteered to drive for the semester beginning in February, 1980. She was required to drive to and from a Newton hospital on Tuesday evenings and again on Wednesday mornings.

DePinto did not drive the same van each time she drove nor did she have her own keys to any of the vans. She had to obtain a key each Tuesday afternoon from the nursing department office or some other campus location, pick up the van at a campus parking lot, and then pick up the other students at a designated location near the campus cafeteria. Upon returning to the college following the Tuesday evening session, she parked the van on campus. She kept the keys overnight since she was to drive again early Wednesday morning and the campus offices were not yet open when the students left. When the van was parked on Tuesday evening, she was not permitted to drive it again until Wednesday morning. She was required to drive the most direct route to and from the hospital and she was not permitted to use the van for personal errands in Newton. After returning to the campus on Wednesday afternoon, DePinto was required to return the van keys to the office from which she had obtained them. She did not have permission to use the vans at any other times or for any other purposes.

At approximately 6:30 a.m. on March 12, 1980, while enroute to the hospital, DePinto was involved in an automobile accident in Newton. The van which she was driving collided with a pickup truck in which Richard Dirksen was a passenger. Dirksen was killed, and his wife, Cindy Dirksen, subsequently filed an action for damages against DePinto and others in the United States District Court for the District of Kansas.

At the time of the accident, an automobile liability insurance policy was in effect between Central Security Mutual Insurance Company and Thomas DePinto, father of Victoria DePinto. Since Victoria was a resident of her father's household and did not own a car at the time of the accident, she was afforded coverage under the policy of her father. The policy contained the following provision concerning the use of cars other than those owned by the insured party:

"We insure other Cars You use with the permission of the owner. This doesn't include Cars owned by, or furnished for the regular use of, You or resident members of Your family."

Plaintiff seeks a declaratory judgment that the policy provided no coverage for defendant, Victoria DePinto, on the basis that the van involved in the accident was "furnished for the regular use" of DePinto. Hesston College was permitted to intervene in the action. The trial court ruled that the exclusionary language contained in the policy was ambiguous and was to be construed in favor of the insured. The trial court concluded that the exclusionary provision was inapplicable and that the policy did provide coverage for the accident in question. Plaintiff appeals from that decision. We affirm.

Appellant challenges the trial court's determination that the phrase "furnished for the regular use of" is ambiguous. We agree with appellant that the phrase is not ambiguous, but this avails appellant nothing. The words are not unusual and their meaning is well known in common parlance. It is not a matter of ambiguity that causes courts to struggle with this phrase. Courts struggle with its application because each case must be decided upon its own facts and circumstances, and therefore, its application is a struggle. Its meaning is not.

In *Miller v. Farmers Mutual Automobile Ins. Co.*, 179 Kan. 50, 292 P.2d 711 (1956), the court considered the exclusionary phrase "furnished for regular use to the named insured." This involved the use of a "car pool" vehicle which the insured seldom used but could have used more often. The trial court found that the vehicle was not furnished to Miller for his regular use. The Supreme Court affirmed. The court noted "that courts have found it difficult to lay down any hard and fast rule, and that, generally speaking, each case has been decided upon its own facts and circumstances." 179 Kan. at 54.

In *General Leasing Corp. v. Anderson*, 197 Kan. 327, 416 P.2d 302 (1966), the court considered the meaning of "furnished for regular use" as it applied to a car loaned by a father to his adult, self-supporting son. The Supreme Court affirmed the trial court's ruling that it was not furnished for regular use. The son kept his car in Emporia. The father kept his car in Burlington and it was not usually available to the son or used by him regularly. The son had the car for a special occasion and had used the father's car only three or four times a year.

The phrase "frequent or regular use" of a "non-owned automobile" was before the court in *Brooks v. Link*, 212 Kan. 690, 512 P.2d 374 (1973). Link lived with his sister, Shirley. Shirley owned a car which was insured and the insurance covered Link's use of the car as a relative residing in the same household. Excluded from coverage under the policy was any automobile "furnished or available for frequent or regular use." Shirley's fiance, Kenneth, spent much time at Shirley's home in the evenings and on weekends. When he was there he made his car available to Link and Shirley. They both used it with his consent and by his agreement. They had duplicate keys for it. Kenneth had no insurance on the car. Link, while driving Kenneth's car, struck Brooks. The car was found to be furnished for frequent or regular use by Shirley and Link, was not a "non-owned automobile" within the meaning of Shirley's policy and the policy provided no coverage for Link's use of Kenneth's car. The court, after examining many cases, observed:

"[T]he courts agree that the question whether the particular use of a 'non-owned automobile' is a 'regular use' within the meaning of the policy is a question of fact. The courts are in agreement that no hard and fast rule has been or can be established for determining this question but each case must stand or fall upon an examination of the facts in the particular case. Furthermore the cases emphasize that the purpose of the so called 'drive other automobiles' clause or 'non-owned automobile' clause is to cover only casual or occasional use of other cars. Any other interpretation would subject the insurance company to greatly added risks without the payment of additional premiums. . . . It seems to us that the availability of the car and the number of times it is used and the presence or absence of an express or implied understanding as to use are simply factors to be considered along with all the other circumstances in the case in determining whether or not a vehicle has been furnished for 'frequent or regular use' within the meaning of an insurance policy." 212 Kan. at 695-696.

In *Travelers Indemnity Company v. Hudson*, 15 Ariz. App. 371, 375, 488 P.2d 1008 (1971), the court defined regular use as "continuous use; uninterrupted normal use for all purposes; without limitation as to use; and customary use as opposed to occasional use or special use."

In *Wallace Co. v. State F. M. Auto Ins. Co.*, 220 Or. 520, 526, 349 P.2d 789 (1960), the Supreme Court of Oregon stated that the phrase "furnished for regular use" as used in context does not imply the manner of use "but implies a right to the regular use of the automobile in the sense that there is an express or implied

understanding with the owner of an automobile that the insured could have the use of the particular automobile" at such time as he desired, if available.

Turning to the facts of the instant case, DePinto's use of the college vans was strictly circumscribed. She had no personal use of the vehicles. Even the route of her travel was regulated by the college. She did have the keys on Tuesday nights but that was merely because the college offices were neither open when she returned nor when she left again on Wednesday morning. The vehicle was not available for her personal use on Tuesday night. The students' driving of the college vans was for the benefit of Hesston College in that no driver had to be employed to take the nursing students to and from the neighboring hospitals for their training. As to DePinto, it was not a continuous use, uninterrupted normal use for all purposes, or without limitation as to use. DePinto's use of the vans was merely an occasional or special use. The policy does provide coverage for the accident in question.

The judgment of the trial court is affirmed.